IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| HERBERT W. LUX, JR., *and* JANICE M. LUX, <br>    *Plaintiffs*, <br><br> v. <br><br> ROGER L. HARRIS, *et al.*, <br>    *Defendants*. | Civil Action No. 3:23cv541 (RCY) |

**MEMORANDUM OPINION**

This matter is before the Court on a Motion to Dismiss (ECF No. 6) filed by Defendants Roger L. Harris, Steven A. Norris, Brian Seay, and Paul Walther (collectively, "Virginia Defendants"[1]). The Virginia Defendants move the Court to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons set forth below, the Court will grant the Virginia Defendants' Motion to Dismiss.

**I. RELEVANT PROCEDURAL BACKGROUND**

On November 1, 2023, Plaintiffs Herbert W. Lux, Jr., and Janice M. Lux served the Virginia Defendants with the Complaint in this matter. ECF No. 3. The Virginia Defendants then filed the instant Motion to Dismiss and Memorandum in Support thereof on November 22, 2023. ECF Nos. 6, 7. In accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Virginia Defendants properly notified Plaintiffs of their Motion to Dismiss, as well as Plaintiffs' right to file a response and the possibility of dismissal if Plaintiffs failed to respond within twenty-

---

[1] Plaintiffs also sued Darci L. Hultquist, Thomas M. Lederhouse, Joseph A. Stasio, Matthew P. Leuer, Paul J. Reed, and Jeremy R. Lehning, all of whom appear to be members of the Erie County Sheriff's Office. *See* Compl. 2, ECF No. 1-1. Due to deficient service, *see* ECF No. 19, those individuals have yet to appear in this action.

one days. *See* Roseboro Notice, ECF No. 8. Plaintiffs—without first seeking leave of court—filed an untimely Brief in Opposition to the Motion to Dismiss on December 21, 2023.[2] ECF No. 11. The Virginia Defendants declined to file a reply. As such, the matter is ripe for review.

## II. FACTUAL ALLEGATIONS

When deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court "accept[s] as true the plaintiff's well-pleaded allegations and views all facts and draws all reasonable inferences in the light most favorable to plaintiff." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Such a standard, however, does not require accepting any unreasonable inferences or a plaintiff's legal conclusions. *Id.* Applying this standard, the Court construes the facts in the Complaint as follows.[3]

On or about August 23, 2021, Paul Walther, the Commonwealth Attorney of Culpeper County ("CA Walther"), contacted the Spotsylvania County Sheriff's Department ("SCSD"). Compl. ¶ III.C. During this call, CA Walther requested that "action be taken" to have Herbert W. Lux, Jr. ("Mr. Lux") "arrested, and held for extradited [sic] to Virginia" in relation to certain charges that CA Walther sought to bring against Mr. Lux.[4] *Id.* Specifically, CA Walther requested that the SCSD coordinate with the "Erie County Sheriffs of New York to arrest Mr. Lux and incarcerate him/hold him[] for extradition." *Id.* ¶ III.C.1. In doing so, CA Walther declined to provide "an affidavit of a credible person from Virginia" averring that a crime was committed by

---

[2] The Virginia Defendants did not object to this late filing. In consideration of the Virginia Defendants' lack of opposition, as well as Plaintiffs' *pro se* status, the Court will consider Plaintiffs' late-filed opposition brief.

[3] Plaintiffs' allegations are replete with legal conclusions of the sort that the Court need not accept at this stage. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). For instance, Plaintiffs aver, *inter alia*, that CA Walther's actions were "contrary to, and in violation of Amendment IV of the U.S. Constitution" as well as Virginia and New York's respective extradition procedures, Compl. ¶ III.C.1, and that the underlying charges "arose from the use of a void Order entered on March 3, 2011 in CR10-429 *Commonwealth v. Matthew Thomas Lux* after the subject matter jurisdiction had expired," *id.* ¶ III.C.2. The Court will ignore such legal conclusions and focus only on the *factual* allegations set forth by Plaintiffs. *See Philips*, 572 F.3d at 180.

[4] At the time of the call, CA Wather was apparently acting in his capacity as a Special Prosecutor for two related cases from Spotsylvania County: *Commonwealth v. Herbert W. Lux, Jr.*, CR11-789 and CR11-790. *Id.*

Mr. Lux. *Id.* CA Walther likewise declined to obtain and forward "a certified copy of the sworn charge" to be attached to the arrest warrant that would ultimately be served upon Mr. Lux. *Id.*

Following CA Walther's request, Deputy Steven A. Norris with the SCSD ("Deputy Norris") contacted the Erie County Sheriff's Department ("ECSD") in New York. *Id.* ¶ III.C.4.[5] Deputy Norris apparently conversed with Deputy Sheriff Darci L. Hultquist ("Deputy Hultquist") of the ECSD. *Id.* During that conversation, Deputy Norris conveyed that Mr. Lux was "wanted on a capias probation violation," and that the SCSD had "full extradition on the subject, [who] is known to be a sovereign citizen." *Id.* Deputy Norris therefore asked that the ECSD send units to Mr. and Mrs. Lux's residence to effectuate Mr. Lux's arrest and extradition, and to notify the SCSD accordingly. *See id.* (alleging that Deputy Norris asked that "if [Mr. Lux] is located[,] please send hit"). Deputy Hultquist subsequently contacted ECSD dispatcher Thomas M. Lederhouse ("Lederhouse") to have an arrest warrant served upon Mr. Lux. *Id.* Deputy Hultquist made such a request "without having . . . [an] affidavit of a credible person from Virginia" averring that "a crime was committed." *Id.* Deputy Holtquist further neglected to request that "a certified copy of the sworn charge" be attached to the "warrant of arrest." *Id.*

After communicating with Deputy Hultquist, Lederhouse dispatched Officers Paul J. Reed ("Officer Reed"), Josepsh A. Stasio ("Officer Stasio"), Matthew P. Leuer ("Officer Leuer"), and Jeremy R. Lehning ("Officer Lehning") of the ECSD (together, the "Officers") to "serve a warrant on [Mr.] Lux." *Id.* The Officers proceeded to Kenneth Rothenberg's home in East Concord, NY, where Plaintiffs and Mr. Rothenberg reside. *Id.* Shortly after the Officers arrived, they knocked on the house's storm door. *Id.* Mr. Lux "opened the interior door to be able to hear better," but the Officers did not initially "identify themselves or why they were at the house." *Id.* Instead,

---

[5] The Complaint includes two sections labeled "III.C.4." Unless otherwise indicated, all citations herein refer to the second such section.

Officer Stasio "stated that someone had run into the mailbox and asked Mr. Lux to come outside so that they could talk to him." *Id.* Mr. Lux "did not accept that invitation and went to step back from the doorway." *Id.* Officer Stasio then grabbed Mr. Lux by his shirt and tried to pull him out of the house, but succeeded only in tearing Mr. Lux's shirt. *Id.*

After his unsuccessful attempt to corral Mr. Lux, Officer Stasio "barged into the house, knocking Mr. Lux and Ms. Lux to the floor[,] injuring Ms. Lux's right arm." *Id.* The three other officers on scene—Officers Leuer, Reed, and Lehning—also followed Officer Stasio into the house. *Id.* The Officers "were informed they were in the house unlawfully and were asked for a warrant of arrest." *Id.* The Officers "failed to produce any kind of a warrant" or extradition-related paperwork, and instead proceeded to "seize[] [Mr.] Lux, putting him in handcuffs." *Id.* Roughly twenty minutes later, Officer Stasio removed Mr. Lux from the house and placed him into a vehicle for transport to the Erie County Holding Center (the "Holding Center"). *Id.* Before putting Mr. Lux into the car, Officer Stasio "grabbed the handcuff of Mr. Lux's right hand and . . . force[d] the handcuff into Mr. Lux's wrist[,] cutting of [sic] circulation." *Id.* Mr. Lux mentioned to the Officers that the circulation was being cut off in his hand. One of the Officers responded that "it was up to [Officer] Stasio if he wanted to loosen the handcuff." *Id.* But, none of the Officers took any "any action to[,] or ask[ed] [Officer] Stasio to[,] alleviate the pain being caused to Mr. Lux" by the handcuffs. *Id.*

Officer Stasio proceeded to take Mr. Lux to the Holding Center in Buffalo, NY, "at speeds in access [sic] of 80 miles an hour, causing Mr. Lux to be concerned for his welfare." *Id.* Once they arrived at the Holding Center, Mr. Lux asked the Officers "for a copy of the Warrant of Arrest and the documents giving them the authority to incarcerate him," but the Officers "failed to provide any form of documentation whatsoever." *Id.* Around the same time, Sgt. Brian Seay ("Sgt. Seay") with the SCSD "remarked to Deputy . . . Hultquist . . . [,] '[h]it is confirmed – please use this as a

detainer – [p]lease contact our warrants division . . . [f]or [e]xtradition arrangements.'" *Id.* Eventually, Mr. Lux was extradited to the Rappahannock Security Center in Stafford, Virginia, where he was again incarcerated. *Id.*

The foregoing constitutes the bulk of Plaintiffs' factual allegations.[6] In terms of injuries, Plaintiffs allege that Ms. Lux was "physically injured and pain[ed] when she was knocked to the floor by [Officer] Stasio." *Id.* ¶ IV. Plaintiffs further allege that Ms. Lux "suffered emotional distress from the . . . actions of the officers that . . . came into the home in which she was living and arrested Mr. Lux," as well as from "the continued incarceration of Mr. Lux and Mr. Lux being taken away from her." *Id.* For his part, Mr. Lux avers that he "incurred stress and pain when the right handcuff was intentionally squeezed into his wrist by [Officer] Stasio." *Id.* Mr. Lux further alleges that he suffered "emotional distress from and some physical pain from his . . . incarceration in New York . . . and in Virginia." *Id.*

### III. STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint." *Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). A Rule 12(b)(6) motion "is not a procedure for resolving . . . contest[s] between the parties about the facts or the substantive merits of the plaintiff's case." 5B Charles A. Wright, Arthur R. Miller, & A. Benjamin Spencer, *Federal Practice & Procedure* § 1356 (4th ed. 2024). Federal Rule of Civil Procedure 8 only requires that a complaint set forth "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell*

---

[6] Again, Plaintiffs include numerous legal conclusions within their allegations. *See* Compl. ¶ III.C.4 (alleging, *inter alia*, that the actions of the SCSD officers were "in direct violation and with a conscious disregard for Mr. Lux's guaranteed rights protected by Amendment IV and Amendment XIV, of the U.S. Constitution, and required by the [extradition acts of New York and Virginia]"). The Court has properly disregarded such conclusions in its recitation of the facts. *See Philips*, 572 F.3d at 180.

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," "detailed factual allegations" are not required in order to satisfy the pleading requirement of Federal Rule 8(a)(2). *Id.* (citations omitted). The plaintiff's well-pleaded factual allegations are assumed to be true, and the complaint is viewed in the light most favorable to the plaintiff. *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). All reasonable inferences that can be drawn from the complaint are drawn in the plaintiff's favor. *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020).

Nevertheless, to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Labels and conclusions," a "formulaic recitation of the elements," and "naked assertions" without factual enhancement are insufficient. *Id.* And although a *pro se* complaint is "to be liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted), such deference "does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure," *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020). Nor does it require the Court to discern the unexpressed intent of a plaintiff or take on "the improper role of an advocate seeking out the strongest arguments and most successful strategy for a party." *Beaudett v. City of Hampton*, 775

F.2d 1274, 1278 (4th Cir. 1985). So, a *pro se* complaint "must nevertheless set forth enough facts to state a claim." *Erwin v. FedEx Freight, Inc.*, 2023 WL 5959422, at *2 (E.D. Va. Sept. 13, 2023).

## IV. DISCUSSION

With their Complaint, Plaintiffs seek to bring a handful of claims pursuant to 42 U.S.C. § 1983. Specifically, Plaintiffs generally assert, against all Defendants, that (1) Mr. Lux was unlawfully arrested and maliciously prosecuted in violation of the Fourth Amendment,[7] and (2) that the arresting Officers subjected Plaintiffs to excessive force when entering Mr. Rothenberg's home and arresting Mr. Lux. *See* Compl. ¶¶ II, III.C.1–III.C.4, IV. Construing the Complaint liberally, Plaintiffs allege that Defendants violated the Fourth Amendment by unlawfully arresting Mr. Lux, maliciously prosecuting Mr. Lux, and utilizing excessive force. *See* Compl. ¶¶ II, III.C.4.

The Virginia Defendants have jointly moved to dismiss these claims. *See* Mot. Dismiss 1,[8] ECF No. 6; Defs.'s Brief Supp. Mot. Dismiss ("Mem. Supp.") 1–2. In support of their Motion, the Virginia Defendants first argue that Plaintiffs fail to allege a violation of any constitutional right. *See* Mem. Supp. 3. The Virginia Defendants then argue that, even if Plaintiffs' purported constitutional right exists, Plaintiffs have failed to adequately allege that the Virginia Defendants have violated it. *See id.* at 4–6.

---

[7] Plaintiffs also suggest that the Defendants violated the procedures outlined in New York and Virginia's state extradition statutes. *See* Compl. ¶ III.C.4; Mem. Opp'n 2. However, they seemingly intend to do so in the context of alleging Fourth Amendment violations. ("Mr. Lux's claim is that while acting under color of law, [Virginia Defendants Seay and Norris] violated the [Fourth] Amendment . . . when they requested [the ECSD] to have Mr. Lux unlawfully arrested and incarcerated . . . (using their phone call as a detainer) . . . . This request was made rather than complying with the procedure required for extradition."); Mem. Opp'n 6–7 ("[CA] Walther instituted the unlawful arrest and incarceration of Mr. Lux . . . with the aid of the Defendants from Virginia and from New York State. Mr. Lux has alleged the violations of the rights secured by the [Fourth] Amendment of the U.S. Constitution and has shown that the alleged deprivation was committed by the Defendants[] while acting under color of state law."). To the extent Plaintiffs are in fact attempting to rest a § 1983 claim solely on the basis of purported state law violations, such claim must fail. *See, e.g., Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999) (holding that to state a claim for relief in a § 1983 action, the complaining party must establish that they were deprived of a right secured by the Constitution or laws of the United States). The Court will therefore analyze Plaintiffs' extradition procedure arguments within the broader context of its Fourth Amendment analysis.

[8] For this and all other filings cited by page number, the Court utilizes the pagination assigned by the CM/ECF system and not the pagination appearing on the original document.

For the reasons stated below, the Court largely agrees with the Virginia Defendants and will dismiss Plaintiffs' claims against them.

**A. Unlawful Arrest**

The Court first considers Plaintiffs' unlawful arrest claim. The crux of this claim appears to be that Defendants caused Mr. Lux to be "unlawful[ly] arrest[ed] [and extradited] . . . , without the required warrant of arrest." Compl. ¶ III.C.4; *see* Brief Opp'n Defs.' Mot. Dismiss ("Mem Opp'n") 2–4, ECF No. 11. The Virginia Defendants contend that this claim lacks merit, *see* Mem. Supp. 3–6, and the Court agrees.

As a preface, the Court notes that a warrantless arrest is not *per se* unlawful. A warrantless arrest will be deemed constitutional so long as the arresting officer has "probable cause to believe that the suspect has committed or is committing an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). The question must therefore become, was Mr. Lux arrested without probable cause? If yes, then Plaintiffs must also establish (for present purposes) that the Virginia Defendants, as non-arresting officers, made reckless or intentionally false statements or omissions that caused the unlawful arrest. *McPhearson v. Anderson*, 873 F. Supp. 2d 753, 757 (E.D. Va. 2012) (citing *Miller v. Prince George's Cnty.*, 475 F.3d 621, 630 (4th Cir. 2007)); *see also id.* (citing *Galarnyk v. Fraser*, 2011 WL 3678433, at *15 (D. Minn. Aug. 22, 2011) (collecting cases)) (remarking that "unreasonable seizure claims against non-arresting officers generally fail"). If Plaintiffs cannot establish both of these prongs, Plaintiffs' related arguments about the deficiencies of the extradition process and the validity of Mr. Lux's subsequent detention—even assuming those grievances are redressable via § 1983—must necessarily fail. *See Virginia v. Moore*, 553 U.S. 164, 173–74 (2008) ("[W]hen States go above the Fourth Amendment minimum, the Constitution's protections concerning search and seizure remain the same.").

The Court now turns to the probable cause question. Probable cause to justify an arrest "means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *DeFillippo*, 443 U.S. 31, 37 (1979). The evidence needed to establish probable cause is "more than a mere suspicion, rumor, or strong reason to suspect but less than evidence sufficient to convict." *U.S. v. Williams*, 10 F.3d 1070, 1073–74 (4th Cir. 1993) (citing *Wong Sun v. United States*, 371 U.S. 471, 479 (1963); *United States v. Fisher*, 702 F.2d 372, 375 (2d Cir. 1983)). "The probable-cause inquiry turns on two factors: 'the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct.'" *Smith v. Munday*, 848 F.3d 248, 253 (4th Cir. 2017) (quoting *Graham v. Gagnon*, 831 F.3d 176, 184 (4th Cir. 2016)).

Here, the facts alleged—even read in the light most favorable to Plaintiffs—support a finding of probable cause. Specifically, the Officers in New York were made aware that the Virginia Defendants sought to bring charges against Mr. Lux in Virginia, and that Mr. Lux was wanted on a "capias probation violation." This information constitutes "more than a mere suspicion, rumor, or strong reason to suspect" that Mr. Lux had committed, was actively committing, or was about to commit a crime. *Williams*, 10 F.3d at 1073–74. And as the Virginia Defendants note, Plaintiffs' allegations largely only evince a disagreement with the substance and validity of the underlying charges, *not* the fact of their existence. *See, e.g.,* Compl. ¶ III.C.4 (emphasizing that the charges CA Walther sought to bring against Mr. Lux stemmed from a "void Order" issued in another Virginia criminal matter and that "Virginia did not have jurisdiction of the crime"); Mem. Opp'n 3–5 (repeatedly reiterating the invalidity of the Order underlying Mr. Lux's Virginia charges). But a Fourth Amendment false arrest claim is not the proper procedural device to make such a challenge to the underlying prosecution(s). *See Heck v. Humphrey*, 512

9

U.S. 477, 486 (1994) ("[T]he . . . principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction."). Based on the facts and circumstances known to the arresting Officers, then, it is apparent on the face of the Complaint that there was probable cause to arrest Mr. Lux.

The Court's analysis could stop here, but the Court notes further that Plaintiffs provide no *factual* allegations to suggest that the Virginia Defendants acted recklessly or made intentionally false statements or omissions in communicating with the arresting Officers, such as could form the basis for § 1983 liability for false arrest on their part. *See McPhearson*, 873 F. Supp. 2d at 757 (non-arresting officers are generally only held liable for the results of reckless or intentionally false statements or omissions, and only if such statements cause the underlying arrest). As noted above, the Virginia Defendants communicated the grounds for the requested arrest of Mr. Lux to the New York Officers; the fact that they did not provide any warrant in support of that request does not render their actions reckless or intentionally misleading. So, in the absence of any non-conclusory allegations that the Defendants acted recklessly or caused the arrest Mr. Lux on false pretenses, the Court has no issue finding that Plaintiffs have failed to state a claim for false arrest and unlawful seizure under § 1983, as to the Virginia Defendants. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (holding that a complaint must contain sufficient factual allegations—as opposed to legal conclusions—to "raise [the plaintiff's] right to relief above the speculative level" (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Based on the above, Plaintiffs' Fourth Amendment false arrest claim will be dismissed as to the Virginia Defendants.

### B. Malicious Prosecution

Construing the Complaint liberally, Plaintiffs also appear to bring a malicious prosecution claim pursuant to the Fourth Amendment. *See, e.g.,* Compl. ¶ III.C.4 ("Knowing all the above facts[,] [CA] Walther chose to maliciously prosecute Mr. Lux anyway."). The Virginia Defendants argue that Plaintiffs' allegations fail to establish the requisite elements for a malicious prosecution claim. *See* Mem. Supp. 4–5. The Court agrees.

To state a claim for malicious prosecution under § 1983, a plaintiff must allege "that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012) (citing *Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012)). The Court need go no further than the recitation of these elements to hold that Plaintiffs' malicious prosecution claim cannot proceed. For the reasons noted above, there was probable cause to arrest Mr. Lux. *See supra* Part IV.A.1. Such a finding necessarily defeats Plaintiffs' malicious prosecution claim. *See Evans*, 703 F.3d at 647. And in any event, Plaintiffs include no allegations indicating whether the criminal proceedings that followed eventually terminated in Mr. Lux's favor. *See* Compl. ¶ III.C.4 (alleging only that Mr. Lux was "taken . . . to the Rappahannock Security Center . . . where he was again unlawfully incarcerated"). The absence of such allegations thus represents a second, independent reason to dismiss Plaintiffs' malicious prosecution claim against the Virginia Defendants as deficiently pleaded. *See Evans*, 703 F.3d at 647.

### C. Excessive Force

Plaintiffs' final Fourth Amendment claim is that the Officers utilized excessive force when knocking Mrs. Lux to the floor and "intentionally squeez[ing]" Mr. Lux's handcuffs into his wrist. Compl. ¶ IV; *see* Compl. ¶ III.C.4. The Virginia Defendants argue that Plaintiffs' excessive force claim should be dismissed because (a) they did not participate in the challenged seizure, Mem.

11

Supp. 6, (b) "whatever chain of causation leading to [Plaintiffs'] injuries [was] interrupted" by the Officers' actions, *id.*, and (c) the allegations do not establish that unreasonable force was used, *see id.* On review, the Court agrees that Plaintiffs' allegations are insufficient to plausibly establish a claim for excessive force against the Virginia Defendants.

All claims that law enforcement officers have used excessive force in the course of an arrest or other "seizure" of a free citizen are "analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395. Under this standard, the question is whether the force used was objectively reasonable, i.e., "whether it was consistent with the amount of force that a reasonable police officer would think necessary to bring the arrestee into custody." *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 205 (2d Cir. 1990) (citing *Martin v. Gentile*, 849 F.2d 863, 869 (4th Cir. 1988)).

Importantly, a law enforcement officer may typically only incur § 1983 liability through "affirmative misconduct." *Randall v. Prince George's Cnty.*, 302 F.3d 188, 202 (4th Cir. 2022). However, the Fourth Circuit recognizes "two limited exceptions to this general rule": bystander liability and supervisory liability. *See Randall*, 302 F.3d at 202; *Wiggins v. Quesenberry*, 222 F. Supp. 3d 490, 501 (E.D. Va. 2016) (applying *Randall*). These forms of liability can attach where a state actor fails to act despite having a duty to act. *Wiggins*, 222 F. Supp. 3d at 501 (quoting *Randall*, 302 F.3d at 203); *Lail v. Caesar*, 2022 WL 672164, at *9 (E.D. Va. Mar. 7, 2022); *Harper v. Blagg*, 2015 WL 6509131, at *14 (S.D. W. Va. Oct. 28, 2015). Bystander liability, on the one hand, arises where an officer "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Randall*, 302 F.3d at 204. Supervisory liability, on the other hand, arises where (1) a supervisor has "actual or constructive knowledge that his subordinate . . . engaged in conduct that posed a 'pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff," (2)

that the supervisor's response to that knowledge "was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,'" and (3) that there was "an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Id*. at 206 (quoting *Shaw v. Stroud*, 13 F.3d 791, 798–99 (4th Cir. 1994)).

In this case, Plaintiffs' allegations regarding the use of excessive force revolve around actions taken by the Officers in New York. The Virginia Defendants argue that Plaintiffs' excessive force claim should be dismissed because they "did not participate in the seizure of Mr. Lux." Mem. Supp. 6. The Virginia Defendants further argue that, "[t]o the extent that [the Virginia] Defendants requested Mr. Lux's extradition, whatever chain of causation leading to [Plaintiffs'] injuries is interrupted by the authorities in New York's actions." *Id.* Finally, the Virginia Defendants contend that the force used by the Officers was reasonably necessary to effectuate Mr. Lux's arrest. *Id.* Plaintiffs respond by arguing, primarily, that the Virginia Defendants "proximate[ly] cause[d]" the Officers' use of excessive force by setting Mr. Lux's arrest into motion. Mem. Opp'n 5; *see* Mem. Opp'n 3–5.

In view of the foregoing principles, the Court finds that Plaintiffs have failed to plausibly allege an excessive force claim against the Virginia Defendants. To reiterate, a law officer may generally only "incur § 1983 liability . . . through affirmative misconduct." *Randall*, 302 F.3d at 202. Here, the Virginia Defendants were not affirmatively involved in the alleged use of excessive force by the Officers in New York. Rather, the Virginia Defendants' only actions occurred in Virginia when they took steps to initiate Mr. Lux's arrest and extradition. Thus, because the Virginia Defendants did not affirmatively participate in the challenged misconduct—i.e., the *Officers*' alleged use of excessive force—Plaintiffs' excessive force claim as to the Virginia Defendants is limited to the two theories outlined above: bystander liability and supervisory

13

liability.[9]  *See id.*; *Wiggins*, 222 F. Supp. at 501; *see also Turkowitz v. Town of Provincetown*, 914 F. Supp. 2d 62, 72 (D. Mass. 2012) ("The extent to which any other individual defendant could be liable depends upon his or her 'own actions,' and no other defendants applied any force . . . . Instead, the theory must be . . . that [the defendants] . . . failed to intervene to prevent the use of excessive force."); *cf. Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) (noting that § 1983 creates a cause of action "based on personal liability," meaning that liability "does not attach unless the individual defendant *caused* or *participated in* a constitutional deprivation" (quoting *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir. 1994) (emphasis added)).  While Plaintiffs do not explicitly argue either theory, it is clear that neither operates to save their claim.

Beginning with bystander liability, Plaintiffs' allegations are insufficient to establish any of the required elements.  To that end, Plaintiffs do not allege that the Virginia Defendants (a) knew the Officers would use and/or were using excessive force while arresting Mr. Lux, (b) had a "reasonable opportunity" to prevent the use of such force, or (c) chose not the act in the face of such knowledge.  *See Randall,* 302 F.3d at 204.  Much to the contrary—Plaintiffs' allegations reveal that the Virginia Defendants were in a different state at the time the Officers allegedly subjected Plaintiffs to the use of excessive force.  *See* Compl. ¶ III.C.4.  Thus, Plaintiffs' allegations are wholly insufficient to plausibly state a claim for bystander liability against the Virginia Defendants.  *See Randall*, 302 F.3d at 204.  Plaintiffs' allegations are likewise insufficient to plausibly state a claim for supervisory liability against the Virginia Defendants.  Succinctly, the Virginia Defendants all work for different entities than the Officers.  Accordingly, there is no

---

[9] To be sure, § 1983 also contemplates that "a government official will be 'responsible for the natural consequences of his actions.'" *Tobey v. Jones*, 706 F.3d 379, 386 (4th Cir. 2013) (quoting *Malley v. Briggs*, 475 U.S. 335, 344 n.7 (1986)).  However, Plaintiffs fail to raise any non-conclusory allegations to suggest that the Officers' purported use of excessive force in carrying out Mr. Lux's arrest was a "natural consequence[]" of the Virginia Defendants' extradition request.  *Id.* (quoting *Malley*, 475 U.S. at 344 n.7).  In the absence of any facts that could reasonably give rise to such an inference, the Court cannot infer that the use of excessive force is a "natural consequence" of any arrest or extradition request.

reasonable interpretation of Plaintiffs' allegations that would suggest the Virginia Defendants held a supervisory role over the Officers. To the extent Plaintiffs attempt to raise a supervisory liability claim against the Virginia Defendants, such claim therefore fails as a matter of law. *See Shaw*, 13 F.3d at 798 (noting that the first element of a supervisory liability claim requires a showing that a "supervisor" has actual or constructive knowledge that "his subordinate" was engaged in unconstitutional misconduct).

In sum, Plaintiffs' allegations fail to plausibly establish that the Virginia Defendants utilized excessive force in violation of the Fourth Amendment. The Virginia Defendants' only affirmative conduct—requesting Mr. Lux's arrest and extradition—is not sufficiently connected with the *Officers*' alleged used of excessive force such as to hold the Virginia Defendants liable for the Officers' actions. And while theories of bystander and supervisory liability theoretically exist to impose liability when state actors do not engage in "affirmative misconduct," neither theory applies on these facts.

## V. CONCLUSION

Therefore, for the foregoing reasons, the Court will grant Defendants' Motion to Dismiss (ECF No. 6) in its entirety and dismiss the Virginia Defendants from this action.

/s/ RCY
Roderick C. Young
United States District Judge

Date: September 9, 2024
Richmond, Virginia